ARTHUR M. BLACKWELL, Appellee, v. FIRST NATIONAL BANK OF ALBUQUERQUE, et al., Appellants.

### SYLLABUS BY THE COURT.

1. TAXES—SALES FOR—NOTICE.—In the sale of real estate for taxes which are delinquent, the notice required by statute, must be strictly complied with, and the time prescribed by statute for the publication and posting of the notice is essential to the validity of any sale made under it, and the notice, if given for less than the statutory time, makes void all subsequent proceedings, no matter how regular they may themselves be.

2. TAXES—VOID SALE—WHEN A LIEN.—If at the time the sale for delinquent taxes was made, there was no statute in force giving the purchaser at an irregular or void tax sale a lien upon the property sold, or for money paid by the purchaser for any subsequent taxes, an act passed after such sale does not give a lien. Such lien exists only by virtue of the provisions of a statute.

3. LIENS—RETROACTIVE LEGISLATION.—The Territory can by statute give a lien to purchasers at void tax sales for the money paid by them upon the property attempted to be sold, but such a lien can not be created by retroactive legislation. Only the lien which the Territory has can pass by such legislation.

4. LAWS—CONSTRUCTION OF.—Laws enacted at the same session of the Legislature relating to the same subject matter are in pari materia and are to be considered and construed together as if they were different sections of one act, and as if enacted at the same time.

*Appeal* from the District Court of Bernalillo County, Second Judicial District. Affirmed.

Statement of facts by the court.

On September 1, 1898, A. M. Blackwell filed suit in the district court of Bernalillo county against the above named defendants, appellants herein. The complaint, answers and amended answers show that on March 1, 1892, Joseph E. Saint and wife gave to Blackwell a mortgage on certain lots situated in the City of Albuquerque to secure the payment of the sum of $3,000.00, and that said debt, at the date of the filing of this suit, was still unpaid. That on September 6, 1895, the collector of the county of Bernalillo sold said property for taxes due for the year 1894, which taxes amounted to $118.92, and that said property was struck off to the defendant, R. W. D. Bryan, who sold the tax certificate to the defendant, The First National Bank. That on July 4, 1896, the bank paid the taxes assessed against the property for the first half of the year 1895, amounting to $49.42, and on January 22, 1897, paid the taxes assessed against the property for the second half of the year 1895, amounting to $49.42, and likewise on January 26, 1897, paid the taxes assessed against the property for the first half of the year 1896, amounting to the sum of $50.03.

On April 6, 1896, March 7, 1898, and March 9, 1898, the property was again sold by the collector of Bernalillo county for taxes due upon the same for 1893, for the second half of 1896, and the second half of 1897, and was purchased at each of said sales by the defendant, J. A. Henry, for the sums of $76.82, $63.22 and $64.53, respectively.

The complaint also alleges that the first sale of said property was advertised to take place on September 2, 1895, and that no adjournment of said sale from September 2, 1895, to some other day was entered on the books of the collector, or posted at the court house door, as required by section 4087 of the Compiled Laws of 1897. That the first notice of adjournment entered on the records of the collector's office was on September 9, 1895, and that the statute does not authorize the advertisement for sale of property for taxes in September, but only on or before the first Monday in March in each year (section 4074, Compiled Laws of 1897). That the other sales

of the property, when the same was bought in by Henry, were also adjourned from time to time, but that no notice of such adjournments are made upon the books of the collector, as required by law.

The complaint also sets out several other alleged defects in the proceedings taken by the collector prior to the making of the sale. That he did not give notice of tax sales by causing the same to be published once a week for four consecutive weeks, the last publication being at least one week prior to the date of sale, in some newspaper published in the county, and also by causing a copy of such notice to be posted on the door of the county court-house at least five weeks before the date of sale; that said property was sold for taxes assessed upon personal property of defendant, Saint, as well as the taxes assessed upon his real estate; that a sale of the personal property was condition precedent to a resort to the real estate; that the property was not advertised to be sold and sold to the person who offered to pay the amount of taxes due on the same for the smallest portion thereof, but was advertised to be sold to the highest bidder for cash; that the notice of sale did not state the amount of the taxes assessed against the property; that the figures were given without dollar marks and were meaningless, etc., etc.

These alleged defects in the manner of advertising the notice of the sale and the manner of conducting it are not denied by the answers. The defendant, Bryan, filed a disclaimer, on the ground that he had no interest in the property. The answers of the bank and Henry alleged that the taxes were regularly assessed, and were liens upon the property, and that by virtue of the sales, and the proceedings set forth in the complaint, that they became subrogated to all the right, title and interest of the Territory of New Mexico and Bernalillo county in and to the taxes for the several years aforesaid, and that if such tax sale should prove irregular, that they should recover the taxes so paid by them and interest at the rate of 25 per cent. per annum upon the several amounts so paid. They further virtually consent to the granting of the

relief prayed for in the complaint on the repayment to them of the several sums that they had paid out, with interest as aforesaid.

Defendant Sandoval, in his answer, admitted that he was the collector of Bernalillo county, and that he would issue deeds to the property to the several holders of tax certificates if they applied to him for the same after the statutory period of three years.

To the answer of the First National Bank and Henry, the plaintiff demurred. This demurrer was never passed upon, as while the case was in this condition a session of the Territorial Legislature was held and a new law was passed which granted to purchasers at tax sales theretofore made the lien of the county and Territory for such taxes, and thereupon the defendant bank and Henry filed amended and supplemental answers, and in addition to the allegations in their previous answers, set up the act of the Legislature, and claimed thereunder the right to recover the taxes which were due at the time the sale took place, together with all penalties thereon and subsequent taxes paid, with interest at the rate of 25 per cent. per annum.

To these amended and supplemental answers, plaintiff demurred, which demurrer in substance set out:

"That the matters and things set up therein constitute no defense against the relief prayed for by the plaintiff; that the act of the Legislature did not purport to subrogate the defendants to any tax lien which the said county and Territory may have had in said property described in said complaint for the taxes mentioned therein; and because if said act did so pretend to give the defendants a lien for said taxes, it would be the creation of a new lien, the old lien having ceased to exist, and would be unconstitutional and void; and because that at the time the said act was passed, neither the Territory nor the county had any lien on said property for said taxes; and because the Legislature at the same session passed an act providing that all penalties and interest upon all delinquent

taxes, which might be paid prior to the first day of July, 1899, should be remitted."

The case was heard upon this demurrer to the amended and supplemental answer, and the demurrer was sustained, and the defendants declining to plead further, the court entered a decree ordering payment into court for the benefit of the defendants of the amount of taxes and costs which had been paid by said defendants, with interest thereon at the rate of 6 per cent. per annum, from the date of the respective payments by the defendants, and cancelling the tax certificates and granting other relief.

From this decree the defendants appealed to this court, assigning as error that the court erred in granting plaintiff the relief prayed for on their paying to the defendants the various amounts of taxes paid by them, with six per cent. interest, when such relief should not have been granted without first compelling plaintiff to pay defendants the several amounts paid by them with interest at the rate of 25 per cent. per annum.

The validity of the assessments are nowhere attacked in the complaint.

A. B. McMILLEN and JOHNSTON & FINICAL for appellants.

CHILDERS & DOBSON for appellee.

MILLS, C. J.—The appellants rely on section 4066 of the Compiled Laws of 1897, which provides that delinquent taxes shall bear interest at the rate of 25 per cent. per annum, and chapter XXVII of the Laws of 1899, which provides:

"That under all tax sales made heretofore by the various county collectors of this Territory, by virtue of the revenue laws in force prior to the first day of January, 1899, the certificates of sale issued by said collectors, as provided for by section 4092 of the Compiled Laws of 1897, shall and hereby do, vest in the purchasers to whom said certificates may have been issued, their heirs and assigns, all the right, title, interest and

lien of the county and Territory, in and to the real estate sold
for the taxes for which the same may have been sold, or
subsequently paid as provided for by section 4094 of said laws;
and under any sale made heretofore, under the provisions of
said revenue laws for the non-payment of taxes which may·
hereafter prove to be invalid, and ineffectual to convey the title
for any cause, except in case of land exempt from taxation,
or upon which the taxes may have been paid prior to such
sale therefor, the lien which the county and Territory had on
such land for all taxes, territorial, county and municipal, for
which said lands may have been sold, or subsequently paid by
the purchaser at tax sale as provided for by section 4094,
shall remain in full force and effect and is hereby declared to
be transferred by said certificates of sale to the grantees, their
heirs, and assigns, who shall be entitled to foreclose said lien
as mortgages and other liens are foreclosed, the owner of said
lands being allowed to redeem the same as now provided by
law upon the payment to said county collectors of the amounts
for which said property was sold for taxes, together with in-
terest thereon at the rate heretofore provided by law and costs:
Provided, that the holder of said certificate will pay or cause
to be paid the full amount of taxes due upon said property,
to the proper officer authorized to receive same."

That the several irregularities set out in the complaint
existed, in the manner of advertising and conducting the sales
of the lots are admitted as they are not denied by the answers,
and it is for us first to determine, whether or not any such
irregularity was sufficient. to make the sales invalid and of
no binding force and effect.

One of the alleged irregularities set out in the complaint
was that the notice of sale required by law was not published
for the length of time required, before the sale was made.

Section 4074, Compiled Laws of 1897, provides that on
or before the first Monday in March, in each year, the col-
lector is required to offer at public sale at the court. house door

all delinquent real estate, and sell the same. Section 4076 provides that notice of such sale TAXES: sale for: shall be given, stating the time and place of notice. such sale, and containing a description of the parcels of real estate to be sold; what taxes, interest and costs are charged against each tract, and the name of their owner, when known; and section 4076 requires that the collector shall give such notice by causing the same to be published in some newspaper, once a week for four consecutive weeks, the last publication to be at least one week prior to the day of sale, and by causing a copy of such notice to be posted on the door of the county court house, for at least five weeks before the day of sale. The publishing and posting of the notice of sale is such an important step in tax proceedings, and is so vital to the validity of the further acts of the officer making the sale, that it must closely follow all the statutory directions and requirements. All of the provisions of law in this regard must be strictly complied with. The time prescribed by statute for the publishing and posting of the notice is essential to the validity of any sale made under it, and the notice if given for less than the statutory time, makes void all subsequent proceedings, no matter how regular they may themselves be.

There was no legal notice of the sale of this property. Thirty-five days should have elapsed between the date of the first publication and the day of sale, and the notice should also have been posted at the door of the court house thirty-five days before such sale. The failure to give legal notice of sale makes the sale illegal and conveys no title to the property. Early v. Doe, 16 Howard, 610; Blackwell on Tax Titles, section 398; and cases cited in Note 1. In view of the foregoing it is unnecessary for us to consider the other irregularities alleged by the complaint to exist.

At the time that the sales for taxes were made there was no statute in force expressly giving the purchaser at an irregular or void sale any lien upon the property sold for the taxes

paid at the sale, or for any subsequent taxes paid thereunder, as provided by the statute.

TAXES: void
sale: when a
lien.
Section 4070 of the Compiled Laws of 1897 provides: "In all cases where any person shall pay any tax, interests or costs, or any portion thereof that shall thereafter be found to be erroneous or illegal, whether the same be due to erroneous or improper assessment, or improper or irregular levying of the tax, to clerical or other irregularities, the board of county commissioners shall order the same refunded to the tax payer without discount." It will be observed that under this section, the county commissioners are required to refund the amount of the money paid "without discount." It does not authorize the payment by the county commissioners of any interest or penalty upon the amount paid, and it also expressly applies only where the tax itself shall be found to be "erroneous or illegal." This section does not apply to the facts in this case. It is nowhere alleged that the taxes for which the property was sold, or the subsequent taxes which it is alleged were paid by the purchasers at the tax sales, were "erroneous or illegal." Section 4072 of the Compiled Laws of 1897 provides: "When by mistake or wrongful act of the collector, clerk, assessor or from double assessment, real estate has been sold on which no tax was due at the time, the county shall refund to the purchaser the amount paid by him, with interest thereon at the rate of twenty-five per cent. per annum; and the collector, clerk or assessor, as the case may be, shall be liable on his official bond to the county for all losses sustained by the county from sales made through his mistake or misconduct." It will be observed that this section applies only where property has been sold by "mistake or wrongful act of the collector, clerk, assessor or from double assessment * * * on which no tax was due at the time." It is not alleged anywhere in the pleadings in this case that the taxes for which the property was sold, or which were subsequently paid by the respondents or their assigns, was not due at the time that the property was sold for taxes. This section it will

also be observed, only applies to money paid at the time of the sale in payment for the property sold. It does not apply to taxes subsequently paid by the purchaser at the void tax sale. It, therefore, does not appear that the respondents could recover from the county under either of these provisions any part of the money alleged to have been paid on account of these void tax sales, as the validity of the taxes assessed is nowhere questioned. The Territory and county, therefore, had no lien on account of any liability to refund to the purchaser the sums thus paid.

The only other section having any application to tax sales, in existence at the time that these sales were made, is section 4101 of the Compiled Laws of 1897, which provides that the deed given to the purchaser three years after the tax sale "shall vest in the purchaser all the right, title, interest and estate of the former owner in and to the lands conveyed, and also all the right, title, interest and claim of the Territory and county thereto, and shall be prima facie evidence in all courts in the Territory, in all controversies and suits in relation to the rights of the purchaser, his heirs or assigns, to the lands thereby conveyed" of nine different facts set out in this section of the statute, all of which were necessary to have made a valid sale of taxes and authorized the purchaser to receive a valid deed therefor. No deed was ever executed and delivered to the purchasers, or their assigns, in this case. It would seem to be plain that the purchaser is not entitled to receive a deed where the tax sale is void, for failure to give notice or any of the other causes alleged in the pleadings in this case, which would render the sale void.

If the purchaser is not entitled to the deed and has not received any, it can not be very well contended that he acquires any lien by virtue of the section of the statute providing for the execution and delivery to him of a deed. He could not show himself entitled to a lien, which arises out of the deed when executed and delivered, unless he also shows himself entitled to receive a deed. It ap-

LIENS: retroactive legislation.

pears in this case, taking the allegations in the complaint to be true, as they are so taken upon demurrer, that the respondents were not entitled to receive a deed and therefore could not claim any lien under this section of the statute.

The act of 1899, above quoted, provides: "That under all tax sales made heretofore by the various county collectors. of this Territory, by virtue of the revenue laws in force prior to the first day of January, 1899, the certificates of sale issued by said collectors, as provided for by section 4092 of the Compiled Laws of 1897, shall and hereby do, vest in the purchasers to whom said certificates may have been issued, their heirs and assigns, all the right, title, interest and lien of the county and Territory, in and to the real estate sold for the taxes for which the same may have been sold, or subsequently paid as provided for by section 4094 of said laws," etc., and "under any sale made heretofore, under the provisions of said revenue laws for the non-payment of taxes which may hereafter prove to be invalid, and ineffectual to convey the title for any cause," etc., the "lien which the county and Territory had on such lands for all taxes, territorial, county and municipal, for which said lands may have been sold, or subsequently paid by the purchaser at tax sale as provided for by section 4094, shall remain in full force and effect, and is hereby declared to be transferred by said certificates of sale to the grantees, their heirs and assigns," etc. We do not deem it necessary in this case to discuss how far the Legislature may attempt to enact retrospective legislation for the purpose of creating liens in favor of a purchaser at a void tax sale which he did not have by virtue of a statutory enactment at the time of such sale. All the authorities hold that no such lien exists in favor of the purchaser, except by virtue of the provisions of a statute. Croskery v. Bush, 74 N. W. Rep. 464, and authorities there cited; Nestor v. Bush, 64 Mich. 657, 31 N. W. Rep. 572; Adams v. Osgood, 60 N. W. Rep. 869; Conway v. Cable, 37 Ill. 82. We think it plain that no such lien existed, prior to the enactment of the statute of 1899, in favor of the purchaser at a void tax sale, and certainly none such

existed prior to the execution and delivery of a deed. The language used in section 4101 of the Compiled Laws is also used in the Iowa statute, and it has been there held that the legal title, and the right to the possession of the land, continues in the original owner of the land until the tax deed has been regularly executed and delivered to the purchaser at the tax sale. Williams v. Heath, 32 Iowa, 519.

The right to collect 25 per cent upon the amount paid at the time of the sale, or for subsequent taxes, in this case must be based upon the act of 1899, as no previous statute expressly gave any such right. The general principles of equity would not require, as a condition for equitable relief, the payment of any such rate of interest, even if it be held that by such payment alone the purchaser at a tax sale is subrogated to the rights of the Territory and county. We deem it, however, unnecessary to discuss this proposition for the determination of this case.

Let us assume that the payment of the taxes by the purchaser and the subsequent payment of taxes did not have the effect of extinguishing the lien of the territory upon the property, and that such lien was in force and effect at the date of the passage of the act of 1899. It seems to us clear that the act of 1899 could convey, and did convey only such lien as the territory and county had at the session of the Legislature when the act of 1899 was passed. In fact, we think it plain that the respondent could recover only to the extent of such lien as the territory or county could enforce at the date of the decree rendered in this case. In Hentig v. Thomas, 53 Pac. Rep., page 80, the Supreme Court of Kansas hold, that it was improper to allow 20 per cent. interest on the sum due at the date of the tax deed and on taxes subsequently paid, because the statute as it existed at the time of the sale allowed such rate, the statute having been subsequently changed, thereby reducing the rate to 12 per cent. The court held that the latter rate, which was that provided by the statute at the time of the rendition of the decree was the correct rate. At the

same session of the Legislature of 1899, however, an act was passed which provides "that all accrued penalties and interest upon taxes now, or heretofore in this year delinquent, shall be remitted upon such taxes which have been or shall be paid on or before the first day of July, A. D. 1899." Acts of 1899, chapter LII, page 106. This act was approved March 16, 1899. The act transferring the lien of the Territory, already discussed, was approved March 4, 1899.

It is a well settled principle that all laws enacted at the same session of the Legislature relating to the same subject, are in pari materia, and are to be considered and construed together as if they were different sections of one act, and as if enacted upon the same day. "Acts of the same session are, according to the British rule of construction of statutes and the rule which prevails in Virginia, parts of the same act, and have effect from the same day and are to be taken together as parts of the same act." Brown v. Barry, 3 Dallas, 364. In another case the Supreme Court of the United States says: "The correct rule of interpretation is that if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them, and it is an established rule that all acts in pari materia are to be taken together as if they were one law." U. S. v. Freeman, 3 How. 564. In fact, we understand that this is the common law rule of construction of the acts of parliament, and in this country of legislatures. See also Perkins v. Perkins, 92 Barb. 531; Sutherland on Statutory Construction, Sec. 283; Town of Highgate v. State, 7 Atlantic Rep. (Ver.) 898, and authorities cited; Sedgwick on Statutory Construction, 209, and note; Cain v. State, 20 Texas 355; People v. Jackson, 30 Cal. 427; St. Martin v. New Orleans, 14 La. Ann. 113; Powers v. Shepard, 46 N. Y. 543; Board of Co. Comms. v. Cutters, 6 Ind. 354.

LAWS: construction of.

We do not doubt but that it is competent for the Legislature by statute to give a lien to purchasers at void tax

sales for the money paid by them upon the property attempted to be sold, but we do not believe that such a lien can be created by re-troactive legislation. Only such lien as the Territory already has may pass by such legislative transfer. Wisconsin Cent. Ry. Co. v. Comstock, 71 Wis. 88; Pier v. Prouty, 67 Wis. 218, and cases cited, supra. Construing these two statutes together as one law, the only lien which the territory had at the time that the decree was rendered in this case was for the payment of the taxes due. The person who owed the taxes had a right to pay them without any interest prior to the first day of July, 1899, by virtue of chapter 52, quoted, supra. We do not believe, therefore, that it can be contended that a person whose property the collector had attempted to sell at a sale which was void, can be required to pay more taxes by the act of the Legislature between the dates of the passage of these two acts and the first day of July, 1899, than any delinquent taxpayer whose property the collector had not attempted to sell at a void tax sale, nor would it be competent for the Legislature to make any such discrimination. By applying the well settled rule of construction above quoted, and construing these two acts together, no such unjust and anomalous result follows. We, therefore, think the court below correctly construed these two statutes. If there was any error at all, it was in requiring the plaintiff to pay six per cent. interest upon the taxes actually paid by the defendants, but as that question, however, is not before us, the plaintiff not having taken any cross-appeal, we express no opinion upon it.

For the foregoing reasons, the decree and judgment of the court below is affirmed.

Parker and McFie, JJ., concur; Crumpacker, J., having heard the case below, and Leland, J., being absent, did not participate in this decision.